1   **WO**

2

3

4

5

6                   **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Murray Hooper,                        )    No. CV 98-2164-PHX-SMM
                                           )
10            Petitioner,                  )    DEATH PENALTY CASE
                                           )
11   vs.                                   )
                                           )    **ORDER RE: DISCOVERY AND**
12                                         )    **EVIDENTIARY HEARING**
     Dora B. Schriro et al.,               )
13                                         )
              Respondents.                 )
14                                         )
     _____       )

15

16

17          Petitioner, Murray Hooper ("Petitioner") is a state prisoner under sentence of death.

18   Pursuant to the Court's general procedures governing resolution of capital habeas

19   proceedings, the parties have completed briefing of both the procedural status and the merits

20   of Petitioner's habeas claims.  Pending before the Court is Petitioner's Motion for Discovery

     and/or Evidentiary Hearing on Claims 1-4, 7-10, 18, 19, 21, 38 and 39.   (Dkt. 79.)[1]

21   Respondents filed an opposition and Petitioner filed a reply.  (Dkts. 92, 95.)

22                   **FACTUAL AND PROCEDURAL BACKGROUND**

23          On December 24, 1982, a jury convicted Petitioner and William Bracy of the first

24   degree murder of Pat Redmond and Helen Phelps, the attempted murder of Marilyn Redmond

25   (daughter of Mrs. Phelps), other associated crimes and criminal conspiracy.   See State v.

26   Hooper, 145 Ariz. 538, 543, 703 P.2d 482, 487 (1985).  In December 1981, at an earlier trial,

27

28          [1]          "Dkt." refers to the documents in this Court's case file.

1  a jury convicted Ed McCall and Robert Cruz of the same crimes.  See State v. McCall, 139

2  Ariz. 147, 677 P.2d 920 (1983); State v. Cruz, 137 Ariz. 541, 672 P.2d 470 (1983).[2]

3       The general facts alleged by the state at trial were as follows.  Pat Redmond and Ron

4  Lukezic were partners in a successful printing business in Phoenix.  Robert Cruz wanted

5  Redmond killed in order to get his interest in the printing business.  In September of 1980,

6  Cruz asked Arnold Merrill if he would be willing to kill Redmond for $10,000.  Merrill

7  declined.  In early December of 1980, Cruz and Merrill went to the airport to pick up William

8  Bracy and Petitioner who had arrived on a flight from Chicago.  At Bracy's request, Merrill

9  drove Petitioner and Bracy by Chesters, a cocktail lounge which Pat Redmond was known

10 to patronize.  As they started following Redmond's car, Merrill noticed that Petitioner was

11 pointing a gun at the automobile, getting ready to attempt to kill Redmond.  Merrill pulled

12 away from Redmond's car to prevent the shooting.  After this failed attempt, Bracy and

13 Petitioner were introduced to Ed McCall.  On December 8, McCall told Merrill that he was

14 joining up with Bracy and Petitioner.

15       On the evening of December 31, 1980, Petitioner, William Bracy and Ed McCall went

16 to the home of Pat Redmond and forced their way in at gunpoint.  Redmond, his wife

17 Marilyn and his mother-in-law Helen Phelps were present.  The three victims were taken into

18 a bedroom where they were robbed of their valuables, bound with surgical tape, and gagged.

19 Each was shot in the head and Pat Redmond's throat was slashed.  Redmond and Helen

20 Phelps died.  Marilyn Redmond survived.  See State v. Bracy, 145 Ariz. 520, 703 P.2d 464

21 (1985); Hooper, 145 Ariz. 538, 703 P.2d 482.  Following an aggravation and mitigation

22 hearing, Petitioner was sentenced to death.  (ROA 1116.)[3]

23

24       [2]    Cruz's convictions were reversed on appeal because of trial court error in the

25 admission of prejudicial testimony suggesting that Cruz had connections to organized crime.
   See Cruz, 137 Ariz. at 545-46, 672 P.2d at 474-75.

26

27       [3]   "ROA" refers to twenty-five volumes of records from trial and post-conviction

28 proceedings, which was prepared for Petitioner's petition for review to the Arizona Supreme
   Court upon denial of his 3rd PCR (Case No. CR-97-0410-PC).  "RT" refers to the reporter's

1       In 1983, Petitioner filed a motion to vacate the judgment alleging that certain

2   prosecution witnesses had received benefits which had not been disclosed to him and which

3   prejudiced him at trial. (ROA 1173.)  The trial court held an extensive evidentiary hearing,

4   which lasted six days. (See RT 7/21/83, 7/22/83, 9/12/83, 9/13/83, 9/15/83 and 9/20/83.)

5   Following the hearing, the trial court denied the motion to vacate the judgment.  (ROA

6   1265.)  On direct appeal, the Arizona Supreme Court affirmed Petitioner's convictions and

7   sentence. See Hooper, 145 Ariz. 538, 703 P.2d 482.

8       On February 7, 1986, Petitioner, *pro per*, filed his first petition for post-conviction

9   relief ("PCR") in the trial court ("PCR court").  (ROA 1494.)  Subsequently, counsel was

10  appointed and filed supplements to the PCR petition.  (ROA 1529, 1540, 1570, 1581.)

11  (Petitioner's pro se PCR filing and counsel's supplements are hereafter collectively referred

12  to as "1st PCR").  After some discovery and the filing of affidavits, the PCR court summarily

13  denied Petitioner's 1st PCR petition. (ROA 1574, 1596.)  Petitioner moved for rehearing,

14  which was denied. (ROA 1597, 1599.)  Petitioner submitted a petition for review to the

15  Arizona Supreme Court.  On May 23, 1989, the Arizona Supreme Court denied Petitioner's

16  petition for review.

17      In 1991, Petitioner filed a preliminary petition for writ of habeas corpus in this Court,

18  No. CIV 91-1495-PHX-SMM.  On November 18, 1992, this Court dismissed the case

19  without prejudice, to allow Petitioner to return to state court to exhaust certain claims.

20      On September 29, 1992, Petitioner filed a second PCR petition in state court ("2nd

21  PCR").  (ROA 1626-27.)  The PCR court conducted an evidentiary hearing regarding one

22  claim in the 2nd PCR petition.  On March 4, 1994, the PCR court denied relief. (ROA 1720.)

23  Petitioner then sought review with the Arizona Supreme Court, which was denied on

24  December 20, 1994.

25      On February 26, 1996, Petitioner filed a third PCR petition ("3rd PCR").  (ROA

26

27  transcripts of the joint trial of William Bracy and Petitioner.  A certified copy of the state
    court record was provided to this Court by the Arizona Supreme Court on November 7, 2005.

28  (See dkt. 87.)

1741.)  On May 28, 1997, the PCR court summarily dismissed the petition.  (ROA 1769.)
Thereafter, Petitioner submitted a petition for review to the Arizona Supreme Court, which
was denied.

On December 1, 1998, Petitioner returned to this Court and filed an initial habeas
petition.  (Dkt. 1.)  On June 11, 1999, Petitioner filed a supplemental petition for writ of
habeas corpus and a memorandum in support.  (Dkts. 29, 31.)  Included in the petition,
Petitioner alleged that his prior murder convictions in Illinois were likely invalid because he
was tried and sentenced before a judge who was later convicted of racketeering for taking
bribes while trying cases, including murder cases around the time of his capital trial.  See
United States v. Maloney, 71 F.3d 645 (7th Cir. 1995); (dkt. 29 at 9; dkt. 31 at 59.)  Due to
this alleged judicial bias, Petitioner contended that his Arizona sentencing violated the Eighth
Amendment because the Arizona sentencing court relied upon invalid Illinois convictions
in determining the existence of a statutory aggravating circumstance, A.R.S. § 13-703(F)(1).[4]

Based upon these allegations of newly discovered evidence of judicial bias and his
Eighth Amendment sentencing claim, the Court determined that Petitioner's petition included
an unexhausted claim.  Petitioner withdrew his unexhausted claim, and on June 19, 1999, this
Court stayed the action while Petitioner proceeded to exhaust the Eighth Amendment claim
in state court.  However, after more than five years of waiting for Petitioner to complete
exhaustion, this Court vacated its stay, commenting that, if appropriate, Petitioner may move
for leave to amend his petition once exhaustion of the claim in state court is concluded.[5]  (Dkt.

---

[4]     A.R.S. § 13-703(F)(1) provides, as follows:

F.  Aggravating circumstances to be considered shall be the following:  1.  The
defendant has been convicted of another offense in the United States for which under
Arizona law a sentence of life imprisonment or death was imposable.

[5]     On October 19, 2005, Petitioner's Arizona post-conviction relief petition was
denied. The state court concluded, "Even if the Illinois convictions are subsequently declared
invalid, there remain two valid aggravators, § 13-703(F)(5) and (6), and no mitigators.
Pursuant to § 13-703(E) (1982), the court was required to impose the death penalty if it found
one or more aggravating circumstances and that there were no mitigating circumstances
sufficiently substantial to call for leniency. . . . Because [Petitioner] cannot demonstrate that

55.)  The Court then ordered the parties to brief the merits, the procedural status of all claims presented in the supplemental petition and for Petitioner to present any motion for evidentiary development of the state court record.  (Id.)  In accordance with the Court's Order, Petitioner filed this motion for discovery and/or evidentiary hearing.  (Dkt. 79.) Therefore, the Court will first determine whether the claims for which Petitioner seeks evidentiary development are appropriate for review on the merits by a federal habeas court or subject to a procedural bar.

**PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT**

Because this case was filed after April 24, 1996, it is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  Lindh v. Murphy, 521 U.S. 320, 336 (1997); Woodford v. Garceau, 538 U.S. 202, 210 (2003).  The AEDPA requires that a writ of habeas corpus not be granted unless it appears that the petitioner has properly exhausted all available state court remedies.  28 U.S.C. § 2254(b)(1); see also Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509 (1982).  To properly exhaust state remedies, the petitioner must "fairly present" his claims to the state's highest court in a procedurally appropriate manner.  O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999).

A claim is "fairly presented" if the petitioner has described the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.  Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 277-78 (1971).[6]  If a petitioner's habeas claim includes new factual allegations not presented to the

_____

the invalidity of his Illinois convictions would probably have resulted in a sentence less than death, he has not presented a colorable claim for relief."  Petitioner has filed a petition for review in the Arizona Supreme Court.

[6]  Resolving whether a petitioner has fairly presented his claim to the state court, thus permitting federal review, is an intrinsically federal issue which must be determined by the federal court.  Wyldes v. Hundley, 69 F.3d 247, 251 (8th Cir. 1995); Harris v. Champion,

- 5 -

state court, the claim may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court. <u>Vasquez v. Hillery</u>, 474 U.S. 254, 260 (1986).

A habeas petitioner's claims may be precluded from federal review in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. <u>Coleman</u>, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted in federal court if the petitioner failed to present the claim in any forum and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." <u>Id.</u> at 735 n.1. This is often referred to as "technical" exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy. <u>See</u> <u>Gray v. Netherland</u>, 518 U.S. 152, 161-62 (1996) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.").

Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may seek relief in post-conviction proceedings and raise federal constitutional challenges to their convictions or sentences in state court. Rule 32.2 provides, in part:

> a. Preclusion. A defendant shall be precluded from relief under this rule based upon any ground:
> . . . .
>
> (2) Finally adjudicated on the merits on appeal or in any previous collateral proceeding;
>
> *(3) That has been waived at trial, on appeal, or in any previous collateral proceeding.*
>
> b. Exceptions. Rule 32.2(a) shall not apply to claims for relief based on Rules 32.1(d), (e), (f), (g) and (h). When a claim under [these sub-sections] is raised in a successive or untimely petition, the petition must set forth the reasons for not raising the claim in the previous petition or in a timely manner. If meritorious reasons do not appear substantiating the claim and indicating

---

15 F.3d 1538, 1556 (10th Cir. 1994).

1

2

why the claim was not stated in the previous petition or in a timely manner, the petition shall be summarily dismissed.

Ariz. R. Crim. P. 32.2 (1998) (emphasis added). Thus, pursuant to Rule 32.2, petitioners may not be granted relief on any claim which could have been raised in a prior petition for post-conviction relief. Only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition or not presented in a timely manner will the preclusive effect of Rule 32.2 be avoided. Ariz. R. Crim. P. 32.2(b), 32.4(a).

Therefore, in the present case, if there are claims which have not been raised previously in state court, the Court must determine whether Petitioner has state remedies currently available to him pursuant to Rule 32. If no remedies are currently available, petitioner's claims are "technically" exhausted but procedurally defaulted. Coleman, 501 U.S. at 732, 735 n.1. In addition, if there are claims that were fairly presented in state court but found defaulted on state procedural grounds, such claims also will be found procedurally defaulted in federal court so long as the state procedural bar was independent of federal law and adequate to warrant preclusion of federal review. Harris v. Reed, 489 U.S. 255, 262 (1989). A state procedural default is not independent if, for example, it depends upon an antecedent federal constitutional ruling. See Stewart v. Smith, 536 U.S. 856 (2002) (per curiam). A state bar is not adequate unless it was firmly established and regularly applied at the time of application by the state court. Ford v. Georgia, 498 U.S. 411, 424 (1991).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. Reed v. Ross, 468 U.S. 1, 9 (1984). As a general matter, the Court will not review the merits of procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the failure to properly exhaust in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. Coleman, 501 U.S. at 735 n.1.

Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some

1  objective factor external to the defense impeded counsel's efforts to comply with the State's

2  procedural rule." Id. at 753.  Objective factors which constitute cause include interference

3  by officials which makes compliance with the state's procedural rule impracticable, a

4  showing that the factual or legal basis for a claim was not reasonably available to counsel,

5  and constitutionally ineffective assistance of counsel.  Murray v. Carrier, 477 U.S. 478, 488

6  (1986).  "Prejudice" is actual harm resulting from the alleged constitutional error.  Magby

7  v. Wawrzaszek, 741 F.2d 240, 244 (9th Cir. 1984).  To establish prejudice resulting from a

8  procedural default, a habeas petitioner bears the burden of showing not merely that the errors

9  at his trial constituted a possibility of prejudice, but that they worked to his actual and

10 substantial disadvantage, infecting his entire trial with errors of constitutional dimension.

11 United States v. Frady, 456 U.S. 152, 170 (1982).

12 **PROCEDURAL STATUS OF CLAIMS**

13        The Court reviews the procedural status of all the claims for which evidentiary

14 development is sought:  Claims 1-4, 7-10, 18, 19, 21, 38 and 39.  Respondents concede that

15 Claims 1 and 18 are properly exhausted.  Petitioner concedes that Claim 7 is procedurally

16 barred.  The parties contest exhaustion regarding the remainder, which are discussed below.

17 **Claim 2**

18        In Claim 2, Petitioner alleges the following instances of prosecutorial misconduct:

19 (1) the prosecutor, during opening statement, made reference to a pretrial inculpatory

20 identification by a witness despite the fact that the trial court had yet to determine whether

21 such evidence would be admissible at trial; (2) prior to trial, the prosecutor was interviewed

22 by a local magazine for a published article regarding the pending trial; and (3) the

23 prosecutorial team allowed a state's witness certain benefits, including sexual relations with

24 his wife while incarcerated.  (Dkt. 31 at 23-24.)  Petitioner argues that he vicariously

25 exhausted Claim 2 through his co-defendant, William Bracy, who presented Claim 2 during

26 his direct appeal to the Arizona Supreme Court.  Because the Arizona Supreme Court had

27 the opportunity to examine the same material facts that Petitioner presents in Claim 2, and

28 resolved such facts as part of Bracy's appeal, Petitioner argues that Claim 2 is exhausted.

1     See State v. Bracy, 145 Ariz. 520, 525-27, 703 P.2d 464, 469-71 (1985).  (Dkt. 78 at 20.)

2          Petitioner's exhaustion argument must be rejected; exhaustion of state court remedies

3     may not be accomplished vicariously on direct appeal through a co-defendant, even if the

4     appeals are consolidated.  See Williams v. Nelson, 431 F.2d 932, 932-33 (9th Cir. 1970)

5     (stating that "questions raised by the appellant involve constitutional privileges which are

6     *personal* to him, and therefore an appeal by his co-defendant can not exhaust the appellant's

7     remedies in the state courts") (emphasis added).  In order to exhaust state remedies, a federal

8     habeas petitioner must present each claim to the state's highest court in a procedurally

9     appropriate manner.  See 28 U.S.C. § 2254(b); Boerckel, 526 U.S. at 839-40.  Petitioner did

10    not comply with this requirement.

11         If Petitioner were to return to state court now and attempt to litigate Claim 2, it would

12    be found waived and untimely under Rules 32.2(a)(3)[7] and 32.4(a) of the Arizona Rules of

13

14         [7]     To the extent the Court concludes throughout this Order that Petitioner does
15    not have an available remedy in state court, because claims or portions of claims would be
      precluded as waived pursuant to Rule 32.2(a)(3), Petitioner does not assert that any
16    exceptions to preclusion are applicable.  See Beaty v. Stewart, 303 F.3d 975, 987 & n.5 (9th
      Cir. 2002) (finding no state court remedies and noting that petitioner did not raise any
17    exceptions to Rule 32.2(a)).  First, Petitioner does not assert the application of any of the
18    preclusion exceptions enumerated in Rule 32.2(b)(2)–expired sentence, newly discovered
      material facts, no fault untimely appeal or PCR proceeding, significant change in the law, or
19    actual innocence of crime or death sentence–and the Court finds that none of them apply.
20    See Ariz. R. Crim. P. 32.2(b)(2); 32.1(d) - (h).  Second, Petitioner does not argue that any
      of the claims are of the type that cannot be waived absent a personal knowing, voluntary and
21    intelligent waiver.  Cf. Cassett v. Stewart, 406 F.3d 614, 622-23 (9th Cir. 2005)(addressing
      waiver because raised by petitioner).
22         The Court concludes, as to all of the claims in this Order for which the Court
23    determines there is no available remedy in state court pursuant to Rule 32.2(a)(3), that none
24    of those claims fall within the limited framework of claims requiring a knowing, voluntary
      and intelligent waiver.  See Ariz. R. Crim. P. 32.2(a)(3) cmt. (West 2004) (noting that most
25    claims of trial error do not require a personal waiver); Stewart v. Smith, 202 Ariz. 446, 449,
      46 P.3d 1067, 1070 (2002) (identifying the right to counsel, right to a jury trial and right to
26    a 12-person jury under the Arizona Constitution as the type of claims that require personal
27    waiver); see also State v. Espinosa, 200 Ariz. 503, 505, 29 P.3d 278, 280 (Ct. App. 2001)
      (withdrawal of plea offer in violation of due process not a claim requiring personal waiver);
28    but cf. Cassett, 406 F.3d at 622-23 (finding claim not defaulted because unclear whether

1  Criminal Procedure because it does not fall within an exception to preclusion. See Ariz. R.

2  Crim. P. 32.2(b); 32.1(d)-(h).  Therefore, the allegation is "technically" exhausted but

3  procedurally defaulted because Petitioner no longer has an available state remedy. Coleman,

4  501 U.S. at 732, 735 n.1.  Federal review on the merits of this claim is procedurally barred

5  unless Petitioner can establish cause and prejudice or a fundamental miscarriage of justice.

6  There being an absence of a cause and prejudice or miscarriage of justice argument, Claim

7  2 is procedurally barred.

8      **Claim 3**

9      Claim 3 alleges that trial counsel rendered ineffective assistance of counsel ("IAC")

10  at trial by: (1) failing to file with the trial court written support for his oral motion for

11  severance from co-defendant Bracy, and (2) failing to object to the peremptory challenge of

12  a black juror from the jury panel which resulted in Petitioner being tried by an all-white jury.

13  (Dkt. 31 at 24-26.)  Respondents acknowledge that Claim 3 was raised during the 1st PCR

14  proceeding, but contend that the claim was not fairly presented in state court as a federal

15  claim. (Dkt. 67 at 23.)  Petitioner replies that Claim 3 is exhausted, regardless of the lack of

16  fair presentation of the federal nature of the claim, because Arizona IAC standards are

17  identical to federal IAC standards.  (Dkt. 78 at 22-23.)

18      In Peterson v. Lampert, 319 F.3d 1153, 1159-61 (9th Cir. 2003) (en banc), an Oregon

19  petitioner claimed inadequate assistance of counsel under the Oregon Constitution.  On

20  federal habeas, he argued that the federal nature of the claim was fairly presented in state

21  court because his "inadequate assistance" claim was functionally identical to ineffective

22  assistance of counsel under the United States Constitution.  Because the Peterson court

23  concluded that federal and state standards were not identical, only "merely similar," the court

24  held that petitioner's "inadequate assistance" claim did not fairly present a federal IAC in

25  state court. Id. at 1160.  Consequently, the court did not resolve whether fair presentation

26  may occur in the context of state and federal standards being functionally identical.  Id.

27  _____

28  personal waiver would be required under state law).

1    Subsequent to Peterson, in Sanders v. Ryder, 342 F.3d 991, 999-1001 (9th Cir. 2003),

2    the Ninth Circuit revisited the issue.  In Sanders, a Washington pro se petitioner litigated an

3    IAC claim in state court, but failed to raise the federal nature of the claim to the Washington

4    Supreme Court in his petition.  Id. at 998-99.  The Ninth Circuit reversed the district court's

5    conclusion that the claim was not exhausted, distinguishing Peterson along the following four

6    grounds:  (1) the petitioner's pro se status; (2) there was no distinction in the terminology of

7    the claim, it was litigated as an "ineffective assistance of counsel" claim in both state and

8    federal court; (3) Washington's standards for resolution of an IAC claim are functionally

9    identical to federal standards for resolution of an IAC claim; and (4) the petitioner indicated

10   the federal nature of his claim in his reply brief to the Washington Supreme Court.  Id.

11   Petitioner maintains that although he failed to alert the state court to the federal nature

12   of his IAC claim, it is exhausted because resolution of an IAC claim in Arizona is

13   functionally identical to resolution of an IAC claim based on the Sixth Amendment.  (Dkt.

14   78 at 22.)  Citing State v. Lee, 142 Ariz. 210, 689 P.2d 153 (1984), and State v. Nash, 143

15   Ariz. 392, 694 P.2d 222 (1985), Petitioner asserts that Arizona has formally adopted

16   Strickland v. Washington, 466 U.S. 668 (1984) as its legal standard for obtaining relief on

17   an IAC claim. (Dkt. 78 at 22.)  In Lee and Nash, the Arizona Supreme Court expressly

18   adopted the legal standards established in Strickland for evaluating IAC claims in Arizona.

19   See Nash, 143 Ariz. at 398, 694 P.2d at 228 (referring to Strickland, the court stated that

20   "adopting the same standard as the United States Supreme Court provides the legal

21   community with a uniform standard for judging counsel's performance.  We believe such

22   uniformity is desirable in this situation.").

23   The question before this Court is whether functional equivalency and identical

24   terminology is enough to satisfy fair presentation.  Although Sanders relied on two other

25   distinguishing factors unique to that case–the petitioner's pro se status and the reference to

26   the federal nature of the claim in the reply brief–the prominent factor is whether the state and

27   federal evaluation are functionally identical.  The en banc court in Peterson discussed only

28   this issue in its analysis of whether a claim can be exhausted in the absence of fair

1    presentation of the federal nature of the claim. 319 F.3d at 1159-60. Peterson cites other

2    circuits that have concluded that when state and federal analysis are identical there is

3    exhaustion in the absence of fair presentation. Id. at 1160 (citing Scarpa v. DuBois, 38 F.3d

4    1, 7 (1st Cir.1994) ("[P]resenting a state-law claim that is functionally identical to a federal-

5    law claim suffices to effectuate fair presentment of the latter claim.") (citing Nadworny v.

6    Fair, 872 F.2d 1093, 1099-1100 (1st Cir.1989)); Verdin v. O'Leary, 972 F.2d 1467, 1476 (7th

7    Cir.1992) (holding that when "facts and legal theory are the same," presentation of the state

8    claim suffices to present the federal claim and placing the burden on the petitioner to

9    demonstrate the "clonal relationship" is appropriate); Evans v. Court of Common Pleas, 959

10   F.2d 1227, 1231-33 (3d Cir.1992) (holding that where the test for insufficiency of evidence

11   is the same under Pennsylvania and federal law, failing to refer to federal law did not

12   foreclose proper exhaustion)).

13          The Court concludes that when the state and federal claim employ identical

14   terminology and the standards for their resolution are functionally equivalent–as is present

15   for an IAC claim in Arizona–exhaustion is satisfied by a Petitioner's presentation of the state

16   law claim in state court. Therefore, Petitioner exhausted Claim 3 in state court and it will be

17   reviewed on the merits.

18   **Claim 4**

19          Claim 4 alleges IAC at sentencing because sentencing counsel failed to develop and

20   present mitigation evidence. (Dkt. 31 at 26-38.) Petitioner contends that he exhausted this

21   claim during his 1st PCR proceeding. (Id. at 28.) Respondents contend Petitioner failed to

22   present Claim 4 in state court and it is procedurally defaulted. (Dkt. 67 at 25-26.)

23          Petitioner did not include Claim 4 in his 1st PCR petition; therefore, he did not fairly

24   present this claim. (See ROA 1494, 1529.) Rather, Petitioner only raised a generic

25   "ineffective assistance of counsel" claim. (See ROA 1494 at 3; 1529 at 2.) Allegations of

26   IAC constitute separate claims, each of which must be exhausted in state court. See

27   Strickland v. Washington, 466 U.S. 668, 690 (1984) (stating that a petitioner making an IAC

28   claim must identify the particular acts or omissions of counsel that are alleged to have been

1    the result of unreasonable professional judgment).  The Ninth Circuit has confirmed that a

2    generic IAC claim is insufficient to exhaust particular IAC allegations.  See Carriger v.

3    Lewis, 971 F.2d 329, 333-34 (9th Cir. 1992) (en banc); see also Moormann v. Schriro, 426

4    F.3d 1044, 1056 (9th Cir. 2005).

5        If Petitioner were to return to state court now and attempt to litigate Claim 4, it would

6    be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of

7    Criminal Procedure because it does not fall within an exception to preclusion.  See Ariz. R.

8    Crim. P. 32.2(b); 32.1(d)-(h).[8]  Therefore, the allegation is "technically" exhausted but

9    procedurally defaulted because Petitioner no longer has an available state remedy.  Coleman,

10   501 U.S. at 732, 735 n.1.  Federal review on the merits of this claim is procedurally barred

11   unless Petitioner can establish cause and prejudice or fundamental miscarriage of justice.

12   Because Petitioner does not argue cause and prejudice or miscarriage of justice, Claim 4 is

13   procedurally barred.

14   **Claim 8**

15       Petitioner alleges that being shackled denied him his constitutional right to be present

16   at all critical stages of his trial, and specifically his right to be present during the empaneling

17   of his jury. (Dkt. 31 at 41-42.)  Respondents contend that Claim 8 is procedurally defaulted

18   because Petitioner only presented it as a state law issue in state court.  (Dkt. 67 at 35.)

19       On direct appeal, Petitioner asserted, in general, the constitutional nature of Claim 8

20   and cited State v. Stewart, 139 Ariz. 50, 676 P.2d 1108 (1984), which specifically relied on

21   Illinois v. Allen, 397 U.S. 337, 343 (1970).  (See Opening Br. at 14.)  In Illinois v. Allen, the

22   U.S. Supreme Court explicitly discussed a criminal defendant's Sixth Amendment right to

23   be present at all critical stages of his trial and the effect of shackling on the exercise of that

24   constitutional right.  Id. at 338.  A petitioner's citation of a state case that analyzes the federal

25   constitutional claim at issue fairly presents that issue to the state court for purposes of

26

27       [8]    If IAC allegations are raised in a successive PCR petition, the claim in the later
     petition will be precluded without a review of the constitutional magnitude of the claim.  See
28   Stewart v. Smith, 202 Ariz. 446, 450, 46 P.3d 1067, 1071 (2002).

exhaustion.  See Peterson, 319 F.3d at 1158-59.  Because Petitioner's Opening Brief cited a state case that analyzed the federal constitutional claim at issue, the Court concludes that Claim 8 is exhausted and will be reviewed on the merits.

**Claim 9**

Claim 9 alleges IAC on appeal.  (Dkt. 31 at 42-43.)  Petitioner first alleges that appellate counsel did not raise the claim that he was denied his right to counsel at his pre-trial identification line-up.  Second, he alleges that appeal counsel John Rood did not raise a conflict of interest claim against his first appellate counsel, Allen Gerhardt, based on the fact that days after presenting oral argument in Petitioner's case to the Arizona Supreme Court, Gerhardt went to work for the Maricopa County Attorney's Office, which had prosecuted Petitioner.  Petitioner contends that Claim 9 was exhausted during his 1st PCR proceeding. Respondents contend that Claim 9 is procedurally defaulted because Petitioner did not fairly present it to the Arizona Supreme Court in a procedurally appropriate manner.  (Dkt. 67 at 37.)

Petitioner raised Claim 9 during his 1st PCR proceedings, but did not preserve Claim 9 by including it in his motion for rehearing following denial of PCR relief.  (ROA 1494, 1597.)  At the time of Petitioner's 1st PCR proceeding, Arizona Rule of Criminal Procedure 32.9 required that alleged errors in a PCR ruling be brought in a motion for rehearing following a denial of post-conviction relief.[9]  See State v. Gause, 112 Ariz. 296, 297, 541

_____

[9]      In 1986, when Petitioner initially filed his PCR petition, former Ariz.R.Crim.P. 32.9 provided in relevant part:

a. Motion for Rehearing; Response; Reply.  Any party aggrieved by a final decision of the trial court in these proceedings may, within 10 days after the ruling of the court, move the court for a rehearing setting forth in detail the grounds wherein it is believed the court erred**. . . .**

c. Petition for Review.  Upon denial of a motion for rehearing any party aggrieved may petition the appropriate Appellate Court for review of the actions of the trial court**. . . .**

1    P.2d 396, 397 (1975) (holding that a PCR petitioner may seek appellate review only after

2    filing and upon denial of a motion for rehearing); see also State v. Carriger, 143 Ariz. 142,

3    146, 692 P.2d 991, 995 (1984) (holding that a petitioner must strictly comply with Rule 32,

4    Arizona Rules of Criminal Procedure, or be denied relief).  The purpose of the rule was to

5    give the trial court an opportunity to correct any errors it may have made in ruling on the

6    PCR petition and to provide a clear statement of issues preserved for review.  See State v.

7    McFord, 125 Ariz. 377, 380, 609 P.2d 1077, 1080 (App. 1980).  Petitioner therefore had

8    notice, at the time of his 1st PCR, that he needed to preserve claims in a motion for rehearing

9    prior to presenting those claims in a petition for review to the Arizona Supreme Court.  See

10   Gause, 112 Ariz. at 297, 541 P.2d at 397; see also State v. Pope, 130 Ariz. 253, 254-55, 635

11   P.2d 846, 847-48 (1981) (citing cases supporting the rule that petitioners must preserve

12   claims in a motion for rehearing prior to filing those claims in a petition for review).

13        Petitioner did not fairly present Claim 9 and exhaust it during his 1st PCR proceeding.

14   The Court concludes that this claim is technically exhausted but procedurally defaulted

15   because it does not allege facts or law which would exempt it from preclusion and

16   untimeliness pursuant to Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal

17   Procedure were Petitioner to return to state court now.  See Ariz. R. Crim. P. 32.2(b),

18   32.1(d)-(h); Coleman, 501 U.S. at 732, 735 n.1.  Petitioner does not allege cause and

19   prejudice or miscarriage of justice to excuse the default; therefore, Claim 9 is procedurally

20   barred.

21   **Claim 10**

22        In Claim 10, Petitioner contends that he was deprived of effective assistance of

23   counsel during his PCR proceedings in violation of the Sixth and Fourteenth Amendments.

24   (Dkt. 31 at 43-44.)  Regardless of exhaustion, Claim 10 is not cognizable for federal habeas

25   relief.  See 28 U.S.C. § 2254(i) (precluding § 2254 relief for ineffective counsel during state

26

27   _____

28   Arizona's post-conviction rules were amended in 1992 and no longer require that claims be
     raised in a motion for rehearing prior to seeking appellate review.

1  PCR proceedings). Further, only violations "of the Constitution or laws or treaties of the

2  United States" may be litigated in the context of a petition for writ of habeas corpus. 28

3  U.S.C. § 2254(a). There is no constitutional right to effective assistance of counsel during

4  PCR proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Murray v.

5  Giarratano, 492 U.S. 1, 7-12 (1989) (the Constitution does not require states to provide

6  counsel in PCR proceedings even when the putative petitioners are facing the death penalty);

7  Bonin v. Vasquez, 999 F.2d 425, 429-30 (9th Cir. 1993) (refusing to extend the right of

8  effective assistance of counsel to state collateral proceedings); Harris v. Vasquez, 949 F.2d

9  1497, 1513-14 (9th Cir. 1990). Accordingly, Claim 10 will be dismissed as not cognizable.

10  **Claim 19**

11      In Claim 19, Petitioner alleges that his pre-trial identification by Marilyn Redmond

12  was unduly suggestive in violation of his due process rights under the Fourteenth

13  Amendment. (Dkt. 31 at 62-64.) (Dkt. 31 at 62-64.) Respondents contend that, on direct

14  appeal, Claim 19 was only presented as a state law issue and therefore it was not exhausted.

15  (Dkt. 67 at 57-58.) Petitioner contends the claim is exhausted because the Arizona Supreme

16  Court reached the merits of the constitutional claim.

17      On direct appeal, the Arizona Supreme Court reached the constitutional merits of

18  Claim 19. See Hooper, 145 Ariz. at 544-45, 703 P.2d at 488-89. The supreme court's actual

19  review of the constitutional nature of Claim 19 satisfies exhaustion. See Sandstrom v.

20  Butterworth, 738 F.2d 1200, 1206 (11th Cir. 1984) ("[t]here is no better evidence of

21  exhaustion than a state court's actual consideration of the relevant constitutional issue").

22  Therefore, Claim 19 will be reviewed on the merits.

23  **Claim 21**

24      Claim 21 alleges that the trial court violated Petitioner's Fourteenth Amendment due

25  process right to a fair trial by restricting the testimony of his eye-witness expert at trial. (Dkt.

26  31 at 68.) Respondents contend that Claim 21 is procedurally defaulted because it was only

27  presented as a state-law issue on direct appeal. (Dkt. 67 at 62.) Petitioner replies that Claim

28  21 was federalized by his citation of State v. Chapple, 135 Ariz. 281, 660 P.2d 1208 (1983),

1    which in turn relied upon <u>United States v. Wade</u>, 388 U.S. 218 (1967), for the due process

2    proposition that counsel is constitutionally required at a pre-trial line-up because eyewitness

3    testimony can be unreliable.

4        On direct appeal, Petitioner did not claim a constitutional violation; he only claimed

5    that the trial court committed reversible error in limiting the testimony of his eye-witness

6    expert, citing <u>Chapple</u>. (Opening Br. at 15-16.)  The Arizona Supreme Court in <u>Chapple</u> did

7    not discuss the constitutional due process claim raised in Claim 21–whether the trial court's

8    limitation of the expert's testimony was so prejudicial that it compromised Petitioner's right

9    to a fundamentally fair trial.  Additionally, <u>Chapple</u> only cited <u>Wade</u> for the proposition that

10   the Supreme Court has recognized the inherent danger of eyewitness testimony.  Further, the

11   U.S. Supreme Court in <u>Wade</u> did not grapple with the constitutional issue presented by Claim

12   21.  388 U.S. at 228-29.

13       Therefore, Petitioner did not fairly present Claim 21 on direct appeal.  The Court

14   concludes that this claim is technically exhausted but procedurally defaulted because it does

15   not allege facts or law which would exempt it from preclusion and untimeliness pursuant to

16   Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure were Petitioner to

17   return to state court now.  <u>See</u> Ariz. R. Crim. P. 32.2(b), 32.1(d)-(h); <u>Coleman</u>, 501 U.S. at

18   732, 735 n.1.  Because Petitioner does not allege cause and prejudice or miscarriage of

19   justice, Claim 21 is procedurally barred.

20   **Claim 38**

21       Claim 38 alleges that Petitioner is actually innocent of the murders based on new

22   evidence obtained from Valinda Lee Harper. (Dkt. 31 at 100-02.)  Although Harper did not

23   testify at his trial,[10] Petitioner claims that Harper can impeach statements made at his trial by

24   state's witnesses, Nina Marie Louie and Arnold Merrill.  (<u>Id.</u>)  Petitioner contends that he

25   exhausted Claim 38 during his 3rd PCR proceeding. (Dkt. 78 at 37-38.)  Respondents

26   contend that Claim 38 is procedurally defaulted because it was never presented to the state

27

28       [10]    Harper did testify at McCall's preliminary hearing in 1981.

1    court as an actual innocence claim.  (Dkt. 67 at 95.)

2         During Petitioner's 3rd PCR proceeding, he raised the factual basis of Claim 38 as a

3    claim of newly discovered evidence.  (ROA 1741.)  Petitioner contended that he was

4    innocent and requested an evidentiary hearing to present Harper's recanted testimony.  (Id.

5    at 8-9.)  The PCR court considered and denied the claim on several grounds, including the

6    merits: "Given the information presented at trial including Mrs. Redmond's identification

7    testimony and the testimony of numerous other witnesses, corroborating items of physical

8    evidence, there is no likelihood that this newly discovered evidence would have changed the

9    verdict had it been presented at trial."  (ROA 1769 at 3.)

10        In 2000, subsequent to Petitioner's 3rd PCR proceeding, Arizona amended Rule 32

11   of the Arizona Rules of Criminal Procedure to add Rule 32.1(h), which created a substantive

12   claim of actual innocence.  Respondents contend that post-2000, Petitioner was required to

13   re-file Claim 38 in state court as an actual innocence claim to satisfy the exhaustion

14   requirement.  The Court disagrees.  Petitioner instituted state court proceedings to exhaust

15   the factual basis of Claim 38, arguing that he was actually innocent of the crime, under the

16   then-available framework of a newly discovered evidence claim.   The state court reached

17   the merits of the innocence claim, concluding that Petitioner had not demonstrated that the

18   new evidence would have changed the verdict.  (ROA 1769.)  Finally, Petitioner included

19   this claim in his petition for review.  (ROA 1771.)  This is sufficient for exhaustion.

20        Claim 38 appears to be a freestanding claim of "actual innocence," independent of a

21   constitutional violation.  "Claims of actual innocence based on newly discovered evidence

22   have never been held to state a ground for federal habeas relief absent an independent

23   constitutional violation occurring in the underlying state criminal proceeding." Herrera, 506

24   U.S. at 400, 417; Turner v. Calderon, 281 F.3d 851, 872-73 (9th Cir. 2002) (denying

25   certificate of appealability where petitioner neither alleged an independent constitutional

26   violation nor presented affirmative proof of innocence).  Under the AEDPA, habeas relief

27   cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a

28   constitutional principle advanced by a petitioner.  See Williams v. Taylor, 529 U.S. 362, 381

1   (2000).  Because the U.S. Supreme Court has not broken sufficient legal ground on whether

2   actual innocence is a cognizable habeas claim, Petitioner may not be granted relief on Claim

3   38.

4        Even if relief on Claim 38 were not categorically barred, Petitioner has not alleged or

5   proffered evidence of innocence that would meet the extraordinarily high theoretical

6   threshold discussed in Herrera.    506 U.S. at 417 (articulating a "truly persuasive

7   demonstration of 'actual innocence'").  The burden for a freestanding actual innocence claim

8   would be higher than the standard used to demonstrate a fundamental miscarriage of justice

9   – "that a constitutional violation has probably resulted in the conviction of one who is

10  actually innocent."  Schlup, 513 U.S. at 316, 327.

11       In 1996, Petitioner filed his 3rd PCR.  (ROA 1741.)  Petitioner included Claim 38,

12  supporting it with an affidavit from his investigator, which provided a summary from an

13  investigative interview with Harper.  (Id.)  In response, Respondents provided the following

14  information regarding Harper's involvement in the case.

15       "On January 1, 1981, the day after the murders, the police had few, if any leads
         regarding the identities of the murderers.  Although Mrs. Redmond had
16       survived, her condition prevented her from giving more than cursory
         descriptions of her assailants, whom she had never seen before.  Thus, the
17       police had no knowledge regarding the involvement of defendant, Bracy,
         McCall, Robert Cruz, Arnie Merrill, or anyone else for that matter.  That
18       situation changed at approximately 9:00 p.m. on January 1, 1981, when the
         police met with a person who about an hour earlier had called Silent Witness
19       with information regarding the Redmond murders. This person gave the police
         the following information: the killers were "Preacher" (Edward McCall),
20       "Billy Brice," and "Hooper;" "Preacher" was a white male and "Billy Brice"
         and "Hooper" were black males; the murders were a hit arranged by "Fat Boy"
21       or "Fat Man;" and "Billy Brice" and "Hooper" had flown in from Chicago for
         the killings and had flown back afterwards.  The next day the informant gave
22       the police additional information: a brown valise that "Preacher" had used
         during the homicide and had given to her on January 2, 1981.  "Preacher,"
23       "Billy Brice" and "Hooper" had been at the informant's home around 7:00
         p.m. on the night of the murders. . . . The anonymous informant who provided
24       the police with all of the above information was Ms. Harper.

25  (ROA 1762 at 10-11 referring to 44 pages of attached police reports.)  The police reports

26  indicate that Harper specifically informed the police that on December 31, Petitioner, Bracy

27  and McCall had been at her apartment, that Ms. Louie was with her at the apartment, and that

28  Petitioner, Bracy and McCall, all of whom were armed, left for the Redmond home just after

1   dark.  (Id., Police Reports 1/4/81, 1/15/81)

2        Based on the investigator's affidavit, Harper allegedly recants previous information

3   provided to the police, specifically that Petitioner was not at her home on New Year's Eve

4   1980.  (Dkt. 31 at 100-02.)[11]  Further, she alleges that Ms. Louie was never her roommate,

5   did not live in her home, and was not at her home on New Year's Eve, 1980.  (Id.)  Harper

6   stated that when she tried to explain this to the prosecution, Prosecutor Brownlee and

7   Investigator Ryan told her she was going to die if she didn't testify as to what they were

8   telling her.  (Id.)  Harper also claimed that Brownlee told her that she would have to "run"

9   since there was a contract out on her life.  (Id.)

10        Respondents argued in state court:  "It is obvious that neither the police nor the

11   prosecution fed Ms. Harper incriminating information about defendant.  (ROA 1762 at 10-

12   11.)  Instead, Ms. Harper, from her own personal observations and from her own knowledge

13   of what the people surrounding the murders had told her, provided information that the police

14   did not have."  (Id. at 10.)  Respondents contend that, even assuming the information from

15   the investigator does constitute recanted statements by Ms. Harper, she would be impeached

16   by her own testimony at McCall's preliminary hearing as well as by statements to police

17   immediately following the homicides.  (Id. at 10-11.)

18        Harper's recanted statements do not come close to the extraordinarily high level of

19   proof that must be demonstrated for a theoretical prima facie actual innocence claim.  They

20   represent, at best, only impeachment of matters testified to by Ms. Louie.  At Petitioner's

21   trial, Ms. Louie testified that the murders were contract killings.  (R.T. 11/23/82 at 40-43.)

22   On December 31, 1980, Louie testified that Petitioner, William Bracy and Edward McCall

23   were over at her apartment, and that Bracy informed her they would soon have plenty of

24

25        [11]     The Court is aware that Petitioner, as an exhibit to his supplemental petition,

26   supplied the 1998 affidavit of Ms. Harper and a transcript of the March 1995 investigative

27   interview.  (Dkt. 31.)  These materials are not part of the state court record on appeal.  As the disposition of Claim 38 makes clear, even if they were part of the record, Claim 38 is

28   meritless.

1   money and that they had some business to take care of that evening.  (Id. at 32-33.)  The next

2   day, after Louie heard and read about the Redmond murders, McCall came over to her

3   apartment.  (Id. at 38-39.)  McCall informed her of their involvement in the contract murders.

4   (Id. at 42-47.)

5        Recanted testimony is an unreliable form of proof.  See Allen v. Woodford, 395 F.3d

6   979, 995 (9th Cir. 2005) (stating that recantation testimony is properly viewed with great

7   suspicion).  Harper's recanted statements fifteen years after the crime are severely weakened,

8   if not completely unbelievable, by the contradictory statements she gave to police just days

9   after the crime.  Moreover, the case against Petitioner at trial was supported by substantial

10  evidence.  Marilyn Redmond identified Petitioner as one of the individuals who committed

11  the crimes against her, her mother and her husband.  (R.T. 11/30/82 at 37-38, 44-46, 50, 55.)

12  Redmond testified that Petitioner and the others stole jewelry, guns and cash from her, her

13  mother and her husband.  (Id. at 38, 40, 44-46, 48-50.)  George Campagnoni corroborated

14  Marilyn Redmond's testimony.  He testified that late in the evening on December 31, 1980,

15  Petitioner, Bracy and McCall arrived at Arnold Merrill's house.  (R.T. 11/24/82 at 79, 86.)

16  Campagnoni further testified that he saw them with jewelry, a man's and a woman's watch,

17  and wedding bands.  (Id. at 86-87.)  Based on this brief review of the evidence, even if the

18  Court were to assume the theoretical potential of a Herrera claim for Harper's statements

19  related to impeachment, Petitioner's actual innocence claim is meritless.

20       **Claim 39**

21       Petitioner alleges that execution by the State after years spent on death row fails to

22  serve any legitimate penological purpose and violates his Eighth Amendment right to be free

23  from cruel and unusual punishment.  (Dkt. 79 at 138-152.)  Petitioner concedes he did not

24  present this claim to the state courts.

25       Regardless of whether Petitioner properly exhausted this claim, the Court will deny

26  Claim 39 as meritless.  See 28 U.S.C. § 2254(b)(2) (West 1999) (district court may deny

27  habeas application on merits notwithstanding failure to exhaust).  The Supreme Court has

28  never held that lengthy incarceration prior to execution constitutes cruel and unusual

punishment.  See Lackey v. Texas, 514 U.S. 1045 (1995) (mem.) (Stevens, J. & Breyer, J., discussing denial of certiorari and noting the claim has not been addressed).  Circuit courts, including the Ninth Circuit Court of Appeals, hold that prolonged incarceration under a sentence of death does not offend the Eighth Amendment.  See McKenzie v. Day, 57 F.3d 1493, 1493-94 (9th Cir.) (en banc) (delay of 20 years), cert. denied, 514 U.S. 1104 (1995); White v. Johnson, 79 F.3d 432, 438 (5th Cir.) (delay of 17 years), cert. denied, 519 U.S. 911 (1996); Stafford v. Ward, 59 F.3d 1025, 1028 (10th Cir.) (delay of 15 years), cert. denied, 515 U.S. 1173 (1995).  Therefore, habeas relief on Claim 39 is denied.

### Summary of Procedural Status Findings

Claims 1, 3, 8, and 18-19 are properly before this Court for review.  Claim 10 will be dismissed as not cognizable.  Claims 38 and 39 will be dismissed on the merits.  Claims 2, 4, 7, 9 and 21 are procedurally barred.  Accordingly, Petitioner's motions for evidentiary development as to Claims 2, 4, 7, 9, 10, 21, 38 and 39 are denied.  The Court turns now to Petitioner's motions for evidentiary development for Claims 1, 3, 8 and 18-19.

### LEGAL STANDARD FOR DISCOVERY AND EVIDENTIARY HEARING

#### Discovery

Rule 6(a) of the Rules Governing Section 2254 Cases ("Habeas Rules") provides that "[a] judge may, for *good cause*, authorize a party to conduct discovery under the Federal Rules of Civil Procedure, and may limit the extent of discovery."  Rule 6(a), 28 U.S.C. foll. § 2254 (emphasis added).  Thus, unlike the usual civil litigant in federal court, a habeas petitioner is not entitled to discovery "as a matter of ordinary course," Bracy v. Gramley, 520 U.S. 899, 904 (1997); see also Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999), and a habeas court should not allow a habeas petitioner "to use federal discovery for fishing expeditions to investigate mere speculation."  Calderon v. United States Dist. Court for the Northern Dist. of Cal. (Nicolaus), 98 F.3d 1102, 1106 (9th Cir. 1996); see also Aubut v. State of Maine, 431 F.2d 688, 689 (1st Cir. 1970) ("[h]abeas corpus is not a general form of relief for those who seek to explore their case in search of its existence").  Pursuant to Bracy v.

1   Gramley, application of Rule 6(a) is relatively straightforward.  Under Bracy, whether a

2   petitioner has established "good cause" for discovery requires a habeas court to determine

3   the essential elements of the petitioner's substantive claim and evaluate whether "specific

4   allegations before the court show reason to believe that the petitioner may, if the facts are

5   fully developed, be able to demonstrate that he is . . . entitled to relief."  Id. at 908-09

6   (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).

7           **Evidentiary Hearing**

8           The decision whether to grant an evidentiary hearing when there are material facts in

9   dispute is generally at the discretion of the district court judge.  See Townsend v. Sain, 372

10  U.S. 293, 312, 318 (1963), overruled in part by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992),

11  and limited by § 2254(e)(2); Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999); Rule

12  8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the district court

13  judge shall determine if an evidentiary hearing is required).  However, a judge's discretion

14  is significantly circumscribed by § 2254(e)(2) of the AEDPA.  See Williams v. Taylor, 529

15  U.S. 420 (2000).  As interpreted by the Supreme Court, subsection (e)(2) precludes an

16  evidentiary hearing in federal court if the failure to develop a claim's factual basis is due to

17  a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's

18  counsel."  Williams, 529 U.S. at 432.  "The purpose of the fault component of 'failed' is to

19  ensure the prisoner undertakes his own diligent search for evidence."  Id. at 435.  The Court

20  found that this rule served AEDPA's goal of furthering comity in that "federal courts sitting

21  in habeas are not an alternative forum for trying facts and issues which a prisoner made

22  insufficient effort to pursue in state proceedings."  Id.; see also Cardwell v. Netherland, 971

23  F. Supp. 997, 1008 (E.D. Va. 1997) ("Ordinarily, a § 2254 petition is limited to the factual

24  record developed in state court proceedings"), aff'd Cardwell v. Greene, 152 F.3d 331 (4th

25  Cir. 1998), overruled on other grounds, Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000).  In

26  correlation, subsection (e)(2) allows factual development when a petitioner diligently

27  attempts to develop the factual basis of a claim in state court and is "thwarted, for example,

28  by the conduct of another or by happenstance was denied the opportunity to do so."

1  Williams, 529 U.S. at 432; see Baja, 187 F.3d at 1078-79.

2      Thereore, if the petitioner has not failed to develop the factual basis of his claim in
3  state court, the Court will then proceed to consider whether a hearing is appropriate or
4  required under the criteria set forth by the Supreme Court in Townsend. 372 U.S. 293; see
5  Baja, 187 F.3d at 1078 (quoting Cardwell, 152 F.3d at 337).  A federal district court *must*
6  hold an evidentiary hearing in a § 2254 case when the facts are in dispute if (1) the petitioner
7  "alleges facts which, if proved, would entitle him to relief," and (2) the state court has not
8  "after a full hearing reliably found the relevant facts."  Townsend, 372 U.S. at 312-13.  In
9  any other case in which the facts are in dispute and diligence has been established, the district
10  court judge "has the power, constrained only by his sound discretion, to receive evidence
11  bearing upon the applicant's constitutional claim."  Id. at 318 (noting that if a "habeas
12  applicant was afforded a full and fair hearing by the state court resulting in reliable findings,
13  [the judge] may, and ordinarily should, accept the facts as found in the hearing").

14                          **MOTIONS DISCUSSION**

15      The Court now assesses whether evidentiary development should be granted regarding
16  the remaining exhausted claims: Claims 1, 3, 8 and 18-19.

17

18  **Claim 1**

19      Claim 1 alleges the State failed to disclose certain evidence prior to trial and that the
20  non-disclosure of such evidence constitutes a due process violation pursuant to Brady v.
21  Maryland, 373 U.S. 83 (1963).  In Petitioner's motion for evidentiary development, he
22  summarizes the 13 instances of alleged non-disclosures which he presented in his Amended
23  Petition in support of his Brady claim.[12] (Dkt. 79 at 16-17.)  Petitioner argues that the alleged

24  _____

25      [12]    A summary of the 13 alleged non-disclosures are, as follows:  1) Prior to trial,
26  Dan Ryan, county attorney investigator, made car payments for Arnold Merrill's wife, Cathy
    Merrill, totaling over $800.00 for which Ryan received only partial reimbursement; 2) Mrs.
27  Merrill also received approximately $3,000 from the Maricopa County Attorney's Protected
    Witness Program; 3) Arnold Merrill made approximately twenty-two long distance phone
28  calls from the county attorney's office, some of which were with Dan Ryan's knowledge,

1  non-disclosures severely limited effective and thorough cross-examination of the state's

2  witnesses at trial. (Id. at 17.) Based on these allegations, Petitioner seeks discovery in order

3  to investigate other potential non-disclosures, specifically whether there were any additional

4  monies paid or other benefits provided to state's witnesses.  In order to investigate such

5  suspicion, he is requesting that the Court order discovery in the form of record depositions,

6  depositions of trial counsel, trial investigators and the production of relevant transcripts from

7  other trials based on the same criminal conspiracy.  Respondents submit that the request for

8  discovery is merely speculative, conclusory, and constitutes a fishing expedition. (Dkt. 92

9  at 14-16.)[13]

10

11  others of which Merrill made while left unattended in Ryan's custody; 4) untimely disclosure

12  of police reports involving incriminating statements attributed to Petitioner, handwritten notes of Officer Perez, and a report indicating that three black men had been arrested on New

13  Years Eve of 1980; 5) benefits totaling $878 that the prosecution provided to Nina Marie Louie; 6) statements by James Leon Carpenter, an inmate, who allegedly heard Ed McCall

14  confess to the murders and state that he should have slit Marilyn Redmond's throat, leading

15  to an inference that it was McCall, not Petitioner, who slit the throat of Mr. Redmond; 7) alleged perjurious testimony presented to the Grand Jury by Investigator Dan Ryan; 8)

16  pressure and coercion exerted by Investigator Ryan upon non-testifying witness Morris Nellum to get him to make a false statement; 9) falsification of presentence report for

17  witnesses George Campagnoni and Arnie Merrill; 10) payments to informant, Belinda

18  Harper; 11) special favors given to witness Arnie Merrill, including conjugal visits with wife, phone privileges, and furnishing him with drugs to which he was addicted; 12) Arnie

19  Merrill's addiction to Valium at the time of Petitioner's trial; 13) witnesses, Gill and

20  Campagnoni, being taken out of jail by the County Attorney's Office and supplied with alcoholic beverages. (Dkt. 79 at 16-17.)

21

22      [13]      Respondents provided the following state court procedural history regarding

23  the 13 alleged non-disclosures; numbers 1-5 were litigated in the 6-day evidentiary hearing following Petitioner's motion to vacate his sentence and judgement, number 6 was litigated

24  during Petitioner's 1st PCR proceeding, number 7 was raised and found procedurally defaulted during Petitioner's 2nd PCR proceeding, number 8 was denied on the merits during

25  Petitioner's 2nd PCR proceeding, number 9 was factually developed during cross-

26  examination of Campagnoni at trial and argued on direct appeal, number 10 was summarily rejected during Petitioner's 3rd PCR proceeding, numbers 11 and 12 were factually

27  developed during cross-examination of Merrill at trial and argued on direct appeal, and

28  number 13 was factually developed during cross-examination of Gill and Campagnoni at

1    In order to be entitled to discovery, Petitioner must establish good cause.  Rule 6(a),

2  28 U.S.C. foll. § 2254.  To establish good cause, Petitioner must set forth specific allegations

3  showing reason to believe that he may, if the facts are fully developed, be able to

4  demonstrate that he is entitled to relief.  Bracy, 520 U.S. at 908-09.

5    Regarding the requested record depositions and the requested depositions of trial

6  counsel and trial investigators, Petitioner has not set forth any specific allegations showing

7  reason to believe that such discovery is something other than a fishing expedition.  Rather,

8  Petitioner's requests are based solely on the premise that previous non-disclosures warrant

9  searching for other non-disclosures.   Rule 6 discovery may not be used for fishing

10 expeditions.  See Calderon v. U.S. Dist. Ct. for the Northern Dist. of Cal. (Nicholas), 98 F.3d

11 1102, 1106 (9th Cir. 1996).  Absent more specific allegations, Petitioner has not established

12 good cause for the requested depositions.  Regarding transcripts from the Joyce Lukezic and

13 Robert Cruz trials, Petitioner has not demonstrated that he needs the Court's assistance in

14 order to obtain them.  Absent a showing of good cause, Petitioner is not entitled to discovery

15 for Claim 1.

16    Petitioner did not request an evidentiary hearing based on the current record of Claim

17 1.  (Dkt. 79 at 19.)  Rather, Petitioner requests an evidentiary hearing after he obtains

18 additional discovery.  (Id.)  The Court has ruled that Petitioner did not establish good cause

19 for discovery.  Therefore, his conditional evidentiary hearing request on Claim 1 is denied.

20 Even if Petitioner had requested an evidentiary hearing on the current record, his request

21 would be denied because he did not establish what material facts are in dispute, how the

22 factual allegations, if proved, would entitle him to relief, or whether the state court trier of

23 fact reliably found the relevant facts after a full and fair hearing.

24 **Claim 3**

25    Claim 3 alleges that trial counsel was ineffective for:  (1) failing to file with the trial

26 court written support for his oral motion for severance from co-defendant Bracy, and (2)

27 _____

28 trial.  (Dkt. 92 at 12-15.)

failing to object to the peremptory challenge of a black juror from the jury panel which resulted in Petitioner being tried by an all-white jury. (Dkt. 31 at 24-26.)  In a previous Court Order, counsel was informed that any motion for evidentiary development shall:

> A.    separately identify which enumerated claim(s) and sub-claim(s) Petitioner contends need further factual development;
>
> B.    with respect to each claim or sub-claim identified in subparagraph A, (i) identify with specificity the facts sought to be developed; (ii) identify the specific exhibit(s) or evidence Petitioner contends demonstrate or support the existence of each fact sought to be developed; and (iii) explain why such fact(s), exhibit(s) and evidence are relevant with respect to each claim or sub-claim; and
>
> C.    with respect to each claim or sub-claim identified in subparagraph A, explain in complete detail: (1) why such claim or sub-claim sought to be developed was not developed in state court; and (2) why the failure to develop the claim in state court was not the result of lack of diligence, in accordance with the Supreme Court's decision in Williams v. Taylor, 529 U.S. 420 (2000).

Any motion for an evidentiary hearing shall further address, with respect to each claim or sub-claim identified in subparagraph A:

> D.    what material facts Petitioner contends are in dispute;
>
> E.    how the factual allegations, if proved, would entitle Petitioner to relief; and
>
> F.    whether the state court trier of fact reliably found the relevant facts after a full and fair hearing.  See Jones v. Wood, 114 F.3d 1002, 1010 (9th Cir. 1997).

(Dkt. 55 at 3-4.)  Petitioner's motion fails to satisfy the above-stated requirements.  Rather than separately discussing evidentiary development for each claim, Petitioner combines his requests for evidentiary development for Claims 3, 4, 9 and 10.  The Court has denied evidentiary development for Claims 4, 9 and 10.  Consequently, the Court must attempt to discern, based on the specific trial IAC allegations of Claim 3, what type of evidentiary development Petitioner seeks for this claim.

After review of Petitioner's motion, the only discovery request which may be construed as relating to Claim 3 is one asking that the Court "allow Petitioner to retain the services of a qualified attorney" to review the case and proffer an expert opinion on whether counsel performed ineffectively.  This is not a discovery request; this is a funding request. Petitioner's funding request must be denied.  The prevailing view is that expert testimony

regarding the standards of practice for criminal defense attorneys in capital cases does not substantially aid the district courts in resolving claims of ineffective assistance of counsel. District courts are fully qualified to understand and apply the legal analysis required by Strickland v. Washington, 466 U.S. 668, 687 (1984), to the facts as developed during the litigation of the federal habeas corpus petition. Cf. LaGrand v. Stewart, 133 F.3d 1253, 1270 n.8 (9th Cir. 1998) ("Although the determination of whether counsel has performed deficiently is a mixed question of law and fact . . . there is no requirement that expert testimony of outside attorneys be used to determine the appropriate standard of care."). Regarding Petitioner's request for an evidentiary hearing, Petitioner has not established what material facts are in dispute, how the factual allegations, if proved, would entitle him to relief, or whether the state court trier of fact reliably found the relevant facts after a full and fair hearing.  Consequently, Petitioner's motion for an evidentiary hearing on Claim 3 is denied.

**Claim 8**

Petitioner alleges that being shackled denied him his constitutional right to be present at all critical stages of his trial, and specifically his right to be present during the empaneling of his jury. (Dkt. 31 at 41-42; 78 at 25-26.)  At trial, the court asked Petitioner's counsel about Petitioner's absence from voir dire.  In response, counsel waived Petitioner's presence, citing a conversation Petitioner had with defense investigator Cindy Stone. (RT 10/20/82 at 28.) Subsequently, counsel for Petitioner and Bracy explained that their clients waived their right to be present during voir dire because they were concerned that panel members might see their restraints.  (RT 10/28/82 at 8-9.)  Petitioner raised Claim 8 on direct appeal.

In Petitioner's motion for evidentiary development, he requests that the Court order the deposition of his trial investigator Cindy Stone (nka Cindy Stine) so that he can obtain any and all documentation relevant to the prosecution of the State's investigator, Dan Ryan, regarding criminal contempt charges.  (Dkt. 79 at 23.)

In Petitioner's motion, he fails to explain what specific facts he seeks to develop at the deposition of Ms. Stine or how Mr. Ryan's criminal contempt hearing is relevant to

1    resolution of this claim.  Absent such allegations, Petitioner has not established good cause
2    for ordering this deposition.  More importantly, Claim 8 was presented and resolved on direct
3    appeal based on the appellate record.  As such, it is a record-based claim.  The record-based
4    nature of this claim is bolstered by the state supreme court's treatment of the claim on direct
5    appeal, which looked only at the state court record to resolve the issue.  Because there are
6    no disputed facts with regard to the record made by the trial court regarding the shackling of
7    Petitioner, Claim 8 presents a purely legal question and there is no need for discovery and/or
8    an evidentiary hearing.  See Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir.1992)
9    (stating that no evidentiary hearing is required if "there are no disputed facts and the claim
10   presents a purely legal question").

11   **Claim 18**

12   Claim 18 alleges that the trial court denied Petitioner his Fourteenth Amendment due
13   process rights by precluding impeachment of the State's Investigator, Dan Ryan, through the
14   use of contempt charges that had been filed against Ryan.  (Dkt. 31 at 61-62.)  Petitioner
15   seeks the same discovery that he seeks as to Claim 1, plus custodial subpoenas issued to the
16   agencies that investigated and prosecuted Ryan for contempt.  (Dkt. 79 at 24.)  Respondents
17   contend that resolution of Claim 18 is limited to the existing state court record developed on
18   this issue.  (Dkt. 92 at 20.)

19   Petitioner fails to explain or demonstrate how the record depositions, the depositions
20   of trial counsel or the requested subpoenas will assist the Court in resolving Claim 18.  Claim
21   18 was presented and resolved on direct appeal.  The record-based nature of this claim is
22   bolstered by the state supreme court's treatment of the claim on direct appeal, which looked
23   only at the state court record to resolve the issue.  Because there are no disputed facts with
24   regard to the record made by the trial court regarding the limitation on the cross-examination
25   of Ryan, Claim 18 presents a purely legal question and there is no need for discovery and/or
26   an evidentiary hearing.  See Hendricks, 974 F.2d at 1103.

27   **Claim 19**

28   Claim 19 alleges that the pre-trial line-up identification procedure used for Petitioner

was unduly suggestive in violation of his due process rights under the Fourteenth Amendment.  (Dkt. 31 at 62-64.)  Petitioner seeks discovery regarding Dan Ryan and a deposition of Betty Verdugo.  (Dkt. 79 at 24-25.)

However, Petitioner fails to explain the relevance of his discovery requests or how the discovery will assist the Court in resolving Claim 19.  More importantly, Claim 19 was presented and resolved on direct appeal based on the appellate record.  As such, it is a record-based claim.  Because there are no disputed facts with regard to the record made by the trial court regarding the pre-trial line-up identification procedure attended by Marilyn Redmond, Claim 19 presents a purely legal question and there is no need for discovery and/or an evidentiary hearing.  See Hendricks, 974 F.2d at 1103.

Based on the foregoing,

**IT IS ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**: (a) Claims 2, 4, 7, 9, and 21 based on a procedural bar; (b) Claim 10 for failure to state a cognizable ground for habeas relief; and (c) Claims 38 and 39 on the merits as a matter of law.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Discovery and Evidentiary Hearing (dkt. 79) is **DENIED**.

**IT IS FURTHER ORDERED** that if, pursuant to LR Civ 7.2(g), Petitioner or Respondents file a Motion for Reconsideration of this Order, such motion shall be filed within fifteen (15) days of the filing of this Order.

**IT IS FURTHER ORDERED** that the Clerk of the Court forward a courtesy copy of this Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-3329.

DATED this 27th day of March, 2006.

Stephen M. McNamee
Chief United States District Judge