Jon M. Sands
Federal Public Defender
Kelly L. Culshaw (OH Bar No. 0066394; CA No. 304778)
Nicole List (HI Bar No. 10077)
Nathan A. Maxwell (AZ Bar No. 033838)
Assistant Federal Public Defenders
850 W. Adams St, Suite 201
Phoenix, Arizona 85007
kelly_culshaw@fd.org
nicole_list@fd.org
nathan_maxwell@fd.org
Telephone: (602)382-2816
Facsimile: (602) 889-3960

*Counsel for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Murray Hooper,<br><br>        Petitioner,<br><br>v.<br><br>The Arizona Department of Corrections, Rehabilitation & Reentry (ADCRR); David Shinn, Director of the Arizona Department of Corrections, Rehabilitation & Reentry; James Kimble, Warden, ASPC – Eyman<br><br>        Respondents. | No. CV-98-02164-PHX-SMM<br><br>DEATH-PENALTY CASE<br><br>**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT**<br><br>**Execution scheduled for November 16, 2022** |

      Plaintiff-Petitioner Murray Hooper, having filed his Complaint in the above-captioned case, moves pursuant to Federal Rule of Civil Procedure 65(a), for a preliminary injunction and/or a temporary restraining order and/or stay order preventing the Arizona Department of Corrections, Rehabilitation and Reentry ("ADCRR") from executing Plaintiff-Petitioner without first providing him with

DNA and fingerprint testing that could exonerate him. Plaintiff-Petitioner seeks injunctive relief to prevent Defendant-Respondents from executing him and depriving him of his rights under the First, Eighth, and Fourteenth Amendments and 42 U.S.C. § 1983, and without proper adjudication of the claims brought in the concomitant lawsuit.

On November 10, 2022, Plaintiff-Petitioner filed an action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 requesting that this Court issue a declaratory judgment that A.R.S. §§ 13-4241 and 13-4240, as applied, violate his rights under the First, Eighth, and Fourteenth Amendments.

Temporary relief is necessary because the Attorney General's Office opposes testing and any stay of execution despite the powerful evidence available for forensic testing, which would cast doubt upon Plaintiff-Petitioner's conviction and would likely point to someone else as the true perpetrator.

In considering a request for a stay of execution, this Court considers "not only the likelihood of success on the merits and the relative harm to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004). The claims Plaintiff-Petitioner raises are substantial and likely meritorious: the denial of DNA and fingerprint testing will prevent identification of the true perpetrator and result in the execution of an innocent man. This motion is supported by the accompanying memorandum.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  Introduction**

The Supreme Court made it clear in *Barefoot v. Estelle*, 463 U.S. 880 (1983), *superseded on other grounds by* 28 U.S.C. § 2253(c), that a stay should be granted when necessary to "give non-frivolous claims of constitutional error the careful attention that they deserve." 436 U.S. at 888. When a court cannot "resolve the merits of [a claim] before the scheduled date of execution," a stay must be granted. *Id*. at 889. It is axiomatic that a court may grant a stay of execution if the moving

party establishes that: (1) he has a strong likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the balance of hardships tips in his favor; and (4) if issued, the injunction would further the public interest. *Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005); *see also Glossip v. Gross*, 576 U.S. 863, 875-77, *reh'g denied*, 136 S. Ct. 20 (2015) (mem.) (stating that plaintiff seeking preliminary injunction must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest"); *see also Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (citation omitted); *In re Campbell*, 750 F.3d 523, 535 (5th Cir. 2014). In a capital case, courts "must be particularly certain that the legal issues have been sufficiently litigated, and the criminal defendant accorded all the protections guaranteed him by the Constitution of the United States." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) (citation omitted). Consideration of these factors in Hooper's case dictates a finding that a stay of execution is warranted.

## II. Equitable principles weigh in favor of staying Plaintiff-Petitioner's execution

### A. There is a likelihood of success on the merits

The Arizona courts have deprived Plaintiff-Petitioner of due process by refusing to apply Arizona's new post-conviction forensic testing statutes. He has a strong likelihood of success on the merits of his § 1983 lawsuit.

For the past 40 years, the State has told a story contingent on a specific series of events that allegedly occurred on December 31, 1980. The State has relied on evidence that Plaintiff-Petitioner, William Bracy, and Edward McCall—and no one else—barged into the Redmond home and that Plaintiff-Petitioner led Mrs. Redmond to a closet in the home before taking her to the bedroom and binding the hands of all three victims with tape. (Tr. 12/21/82 at 33–34; Tr. 11/30/82 p.m. at 45.) The State has asserted that all three of the victims were shot, and that Plaintiff-

Petitioner selected, alone handled, and specifically used a kitchen knife to cut Mr. Redmond's throat. (*See* Tr. 11/17/82 at 47–48; Tr. 11/23/82 at 44; Tr. 11/24/82 at 78.) The State also asserted the adhesive tape used to bind Mrs. Redmond was bought and used exclusively for this crime. (Tr. 12/21/82 at 29, 33–34, 117.) Every accusatory witness who was alleged to have information about this crime testified to this specific series of events occurring in exactly the same way. The principal, bought-and-paid-for accusatory witnesses; i.e., Arnie Merrill and George Campagnoni denied participation in the crime and being inside the Redmond home.

Now, the ability to test those key items—the knife and tape—which the interested witnesses claimed Hooper touched without gloves, may be tested. As explained below, that testing will show that every witness who testified against Plaintiff-Petitioner did so falsely, and also demonstrate that the already troubling eyewitness identification of Mrs. Redmond was mistaken. No conviction could have been obtained in the first place, if this is what the physical evidence shows.

Hooper is likely to succeed on his § 1983 action because the deprivation of his constitutional rights is apparent. Arizona's forensic testing statutes mandate testing, even if the trial evidence was overwhelming, so long as forensic testing holds out just a reasonable probability that new evidence, if exculpatory, would have led to a different outcome. *See* A.R.S. § 13-4241; *see also* A.R.S. § 13-4240.

As explained in Plaintiff-Petitioner's complaint, the superior court construed its own statutes to deprive him of due process and the testing he should have been permitted under its statute. The superior court ignored that testing in Plaintiff-Petitioner 's case may finally identify the actual offenders—including the same paid government witnesses or their cohorts who framed Plaintiff-Petitioner in the first instance.

As such, A.R.S. §§ 13-4241 and 13-4240, as construed by the Arizona courts, deprived Hooper of procedural due process. *See Foucha v. Louisiana*, 504 U.S. 71, 79–80 (1992) (failure to provide relief for a possibly innocent prisoner amounts to

an "arbitrary" abridgement of the "[f]reedom from bodily restraint [that] has always been at the core of the liberty protected by the Due Process Clause"). When a state creates a judicial remedy, access to that remedy must be fairly afforded. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977). Where, as here, the state fails to provide access to evidence needed to litigate claims of innocence, it imposes an intolerable barrier to the right of access to courts. *See Wade v. Brady*, 460 F. Supp. 2d 226, 250 (D. Mass. 2006) ("Denying prisoners access to potentially exculpatory DNA evidence limits meaningful access to the courts in even more profound terms than denying access to a law library or attorney."). The Fifth Circuit has found an access-to-courts violation when state actors impeded a potential litigant's access to evidence. *See Ryland v. Shapiro*, 708 F.2d 967, 971-76 (5th Cir. 1983). And "DNA testing has an unparalleled ability both to exonerate the wrongly convicted and to identify the guilty." *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 55 (2009). Here, Plaintiff-Petitioner has been denied access to critical evidence—such as DNA present on the knife used to commit the murder, and the fingerprints lifted from the scene—under extraordinary circumstances.

Because Plaintiff-Petitioner's § 1983 complaint demonstrates the superior court's conclusion that it would have made no difference, had new testing demonstrated that Plaintiff-Petitioner had been framed by the paid and perjurious witnesses, whose fingerprints place them inside the residence, amounts to an abject violation of the statute and due process, and sets a dangerous precedent that may result in the execution of an innocent man.

**II. Plaintiff-Petitioner Will Suffer Irreparable Harm Absent a Stay and the Balance of Hardships Tips in his Favor**

A stay of execution is necessary because otherwise Plaintiff-Petitioner will be executed in violation of his rights to due process and the freedom from cruel and unusual punishment under the federal and Arizona Constitutions. U.S. Const. amends. V, VI, VIII, XIV. That harm is clear, serious, and irreversible. Moreover,

5

a stay of execution in this case will not substantially harm the State of Arizona. Plaintiff-Petitioner seeks merely to maintain the status quo until this action can be resolved on its merits. This is the very purpose of a preliminary injunction. *See Tanner Motor Livery, Limited v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963) ("It is so well settled as to not require citation of authority that the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits."). Even if the stay or injunction is granted in error, and Plaintiff-Petitioner's § 1983 complaint ultimately denied, then the stay may be lifted and the State can expeditiously proceed towards a new execution date. Common sense dictates that this factor weighs in Hooper's favor.

### A. Stay Furthers the Public Interest

Finally, a stay here would further the public interest, which is served by enforcing constitutional rights and by the prompt and accurate resolution of disputes regarding constitutional rights. *See Cooey v. Taft*, 430 F. Supp. 2d 702, 708 (S.D. Ohio 2006) ("[T]he public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights.").

Plaintiff-Petitioner acknowledges that the State has a "strong interest in proceeding with its judgment." *Beardslee*, 395 F.3d at 1068. However, its retributive purpose for imposing capital punishment is called into question where an individual's innocence could be proven through mandatory forensic testing. The State itself and the citizens of Arizona have a compelling interest in ensuring that such an offense does not occur.

When Plaintiff-Petitioner initially filed his request in September for DNA and fingerprint testing, there was ample time to conduct the requested DNA and advanced forensic testing. DPS estimated it could be completed in roughly two weeks. When Plaintiff-Petitioner filed his Petition for Special Action before the Arizona Supreme Court, there was still time to conduct that testing. That window

has now closed—Plaintiff-Petitioner has six days until his scheduled execution. Minimally, a brief stay of execution is warranted to allow this important testing.[1]

This Court has the inherent authority to do "all things reasonably necessary for the administration of justice." *Schavey v. Roylston*, 448 P.2d 418, 419 (Ariz. Ct. App. 1968). That power flows both from the Arizona Constitution, *see* Ariz. Const. art. VI, § 3and from its inherent power as an appellate court to supervise court operations. *See Arpaio v. Davis*, 210 P.3d 1287, 1291 (Ariz. Ct. App. 2009). Exercise of that authority to stay these proceedings for a limited period is appropriate and necessary to ensure the fair administration of justice.

**III.   No Unnecessary Delay**

Plaintiff-Petitioner has steadfastly maintained his innocence for over forty years. On April 29, 2022, Kelly Culshaw was assigned to Plaintiff-Petitioner case after his long-time counsel left the Federal Public Defender's office (FPD). (ECF No. 177). Culshaw began working at the FPD on March 28, 2022. From March to July, Culshaw's work had been focused on compliance with a statutory deadline in *Gomez v. Shinn*, No. CV-21-01529-PHX-MTL, a capital habeas case in the United States District Court for the District of Arizona. Four days after Mr. Gomez's federal habeas petition was filed in federal district court, the State filed its Motion to set a briefing schedule for a warrant of execution in Plaintiff-Petitioner case. (Mot. to Set Briefing Schedule for Mot. for Warrant of Execution, *State v. Hooper*, No. CR 83-0044-AP (Ariz. July 19, 2022)). Since the filing of that motion, Culshaw, as well as other newly assigned undersigned counsel, have spent many hours trying to acquaint themselves with the legal issues in Plaintiff-Petitioner's

---

[1] This stay is also necessary given the State's recent eleventh-hour disclosure that Marilyn Redmond, prior to selecting Plaintiff-Petitioner out of a live lineup, could not identify Plaintiff-Petitioner in a paper lineup. (Exhibits 1 & 2 at 11, MCAO letters.) The certainty of Mrs. Redmond's identification, given her inability to identify Plaintiff-Petitioner in a paper lineup, is directly undermined and warrants granting this testing and providing sufficient time to be conducted.

case, and preparing for and presenting a clemency hearing.

Plaintiff-Petitioner's case file comprises nearly 100 banker's boxes. Counsel reviewed the case file for issues as quickly as possible and filed a motion with the Maricopa County Superior Court on September 22, 2022, to request DNA and fingerprint testing under A.R.S. §§ 13-4241 and 13-4240. On October 19, 2022, the Maricopa County Superior Court held an oral argument on the motion. (Minute Entry, *State v. Hooper*, No. CR-0000-121686 (Maricopa Cnty. Super. Ct. Oct. 25, 2022)). When the superior court filed its denial of Plaintiff-Petitioner's requested testing October 24, 2022, (Minute Entry, *State v. Hooper*, No. CR-0000-121686 (Maricopa Cnty. Super. Ct. Oct. 24, 2022)), counsel promptly filed a Special Action in the Arizona Supreme Court on October 31, 2022, requesting review of the Maricopa County Superior Court's denial. (Petition for Special Action, *Hooper v. Hon. Jennifer Green*, No. CV-22-0259-SA (Ariz. Oct. 31, 2022)). (Exhibit 3.) After the response, the reply, and an amicus brief were filed, the Supreme Court denied testing on November 10, 2022. (*See* Exhibits 4–6.)

Significantly, on the date Plaintiff-Petitioner filed his testing motion, there was sufficient time to complete the requested testing. DPS advised undersigned counsel that it would take roughly one week to conduct DNA testing, and roughly one additional week to draft its report; the fingerprint testing could occur much more quickly. There was sufficient time to complete the requested testing when the superior court denied Plaintiff-Petitioner's request on October 24, 2022. Time remained to complete the requested testing when Plaintiff-Petitioner filed his special action in the Arizona Supreme Court on October 31, 2022. That window has since closed because the State has adamantly opposed using advanced forensic techniques to ensure that they are, in fact, executing the perpetrator.

IV. **Conclusion**

For the foregoing reasons, Hooper respectfully requests that this Court (1) issue a stay, enjoining Hooper's execution which is currently scheduled for

November 16, 2022 at 10:00 a.m.; and either (2) order the state courts to grant the testing of both fingerprints and DNA to occur, or (3) permit full briefing and argument on his Forensic Testing claim.

Respectfully submitted this 10th day of November, 2022.

Jon M. Sands
Federal Public Defender
District of Arizona

Kelly L. Culshaw
Nicole List
Nathan A. Maxwell

s/Kelly L. Culshaw
Counsel for Petitioner

**PROOF OF SERVICE**

I hereby certify that on November 10, 2022, I electronically filed the foregoing Emergency Motion for Temporary Restraining Order or Preliminary Injunction and Memorandum in Support and its corresponding exhibits with the Clerk's Office by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Daniel Juarez</u>
Assistant Paralegal
Capital Habeas Unit